UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARLES MILLER,

                Petitioner,                Case Number 1:11-CV-12825
                                                         Honorable Thomas L. Ludington

v.

KENNETH ROMANOWSKI,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Charles Miller filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first-degree murder after a bench trial in the Wayne Circuit Court. He was then sentenced to mandatory life in prison. The court will deny the petition because Petitioner's seven claims are either without merit or procedurally defaulted.

**I**

The relevant facts were recited by the Michigan Court of Appeals and are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> The victim in this case, Della Dudley, was a 92-year-old Detroit resident at the time of her death. Defendant is her grandson. The victim received Social Security benefits and owned rental properties in the area. However, she did not have a checking account, preferring to receive her rent payments and pay her bills with cash or money orders. Her family members were aware that she kept cash in her house and often wore a money belt, even to bed.
>
> The victim was very security-conscious. She had installed security doors on the entrances to her house and had several locks on her front door. Because she was hard of hearing, she would not let others, including relatives, in the house at night. Besides the victim, only her son and daughter had keys to her house. The victim also locked several interior doors at night, including the door to her bedroom.

Further, at the victim's insistence, her son had installed iron security bars on the inside frames of her windows. However, the victim's daughter was concerned that if a fire started in the victim's kitchen and she was in the back of the house, she would be unable to escape. Accordingly, the victim apparently permitted the modification of the security bars on one window in the back bedroom—the screws attaching the security bars to the window frame were removed to permit the victim to easily remove the bars and exit the window in case of a fire.

On November 4, 2004, defendant arrived in Detroit on a bus from Toledo, Ohio, to stay with the victim. Apparently, defendant had a history of substance abuse and had tested positive for controlled substances during a recent urine screen. On Saturday, November 6, 2004, defendant did some work for a friend of his aunt, who owned a used furniture store. He worked at the store until about 6:00 p.m. and was paid $ 25 in return. Defendant did not have a car, so another worker drove him to the victim's house shortly after 6:00 p.m. When defendant arrived, Christine Johnson, the victim's cousin, was visiting the victim. According to Johnson, the victim had to unlock her door to let defendant inside. Johnson left the victim's home around 8:00 p.m. When she left, defendant was still at the house and nobody else had come over.

In the early afternoon of Sunday, November 7, 2004, Charles Miller, Sr., defendant's father and the victim's son, went to the victim's house. When he arrived, he rang the doorbell but received no answer. He pulled on the front door and discovered it was unlocked. He found the victim lying next to her bed with her rifle lying on top of her. Her nightgown was bunched around the middle of her body, which was cold to the touch. He moved the rifle from her body and called 911.[1]

After discovering his mother's body and calling emergency personnel, Charles, Sr., called his sister and informed her that the victim was dead and defendant was not at the house. When waiting for the ambulance and police to arrive, he discovered a broken safe in the living room and papers scattered about. According to Charles, Sr., the victim had recently received rent payments of $300 in cash and $600 in money orders and would have had this money in the house at the time of her murder. She also kept personal property belonging to defendant's incarcerated brother, including his wallet and keys, in a safe in her bedroom.

Investigators at the scene noted that the victim's room had been ransacked and found an empty United States Treasury envelope lying near her body. The victim's money belt was not located. The safe had pry marks on it and a pair of hedge clippers was found nearby. The safe only contained a carbon copy of a

---

[1] An assistant medical examiner at the Wayne County Medical Examiner's Office, determined that the victim had died after receiving several cuts to her head and neck, which severed her larynx and jugular vein. He also identified defensive wounds on the victim's hands.

- 2 -

money order, a rubber band, a pair of earrings, and other miscellaneous papers. No cash was found either in the safe or near the victim, nor was the property belonging to defendant's incarcerated brother located. Investigators also found the victim's blood throughout the home, including on a kitchen knife.

Notably, investigators identified the victim's blood on a pair of pajama pants and a sock found in the back bedroom of the house, where defendant had apparently been sleeping. Defendant identified these articles of clothing as his, and DNA tests confirmed that he had worn this clothing. Further, the window in this bedroom that had earlier been adjusted to permit escape in case of fire was open, although not broken, and both the screen and the iron security bars had been removed. However, investigators did not find pry marks on the outside of the window or damage to the sill, indicating that the window was opened and the security bars removed from inside the house. Investigators did not find any other signs of forced entry into the home.

Monica Robertson, the victim's neighbor, testified that she was outside with her dog around 4:00 a.m. and saw a person near the victim's home get into a car and drive off. She knew that defendant had been staying with his grandmother and assumed that he was the individual entering the car.

Conversely, defendant claimed that he had left the victim's house shortly after 8:00 p.m. on November 6, met a girl, and spent the night driving around town with her as she visited her friends. Defendant did not recall the name of the girl, alternately referring to her as Landra, Laura, Lauren, or Paula. According to defendant, he and the girl eventually spent the night at a house in Lincoln Park, Michigan, belonging to one of her friends. They left the house around 1:00 p.m. the following day and parted ways around 2:30 p.m. Defendant claimed that he decided to walk back to Detroit, but did not know how to get there and eventually walked to Brownstown Township. On November 9, at 12:30 a.m., Officer Jonathan Smith of the Brownstown Police Department saw defendant walking in front of the Road Commission Building in Brownstown. When Smith questioned him, defendant said that he was walking from his car, which had broken down in Lincoln Park. Smith asked defendant if he could search his pockets and defendant consented. Smith discovered a small bag of marijuana in defendant's pants pocket, which defendant claimed that he had found on the side of the road. Smith then placed defendant under arrest and, when running a lien check, discovered that he had a number of outstanding warrants in Ohio. He was unable to post the $100 bond for his misdemeanor marijuana charge.

*People v. Miller*, 2008 Mich. App. LEXIS 167, at *1–6 (Mich. Ct. App. Jan. 24, 2008).

Based on this evidence, Petitioner was convicted after a bench trial in the Wayne Circuit Court. He was subsequently sentenced to mandatory life in prison. Petitioner then filed a direct appeal in the Michigan Court of Appeals and asserted the following three claims:

> I. There was insufficient evidence to support Petitioner's conviction of felony murder, as well as the predicate felony necessary for a conviction of felony murder.
>
> II. The trial court erred, thereby denying Petitioner a fair trial, when it admitted irrelevant propensity evidence which revealed that narcotics were seized from his person at the time of his arrest and that he had outstanding warrants in Ohio.
>
> III. Petitioner was denied the effective assistance of counsel when his trial counsel failed to object to the admission of irrelevant propensity evidence.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Id.* Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claims that were presented to the Michigan Court of Appeals. The Michigan Supreme Court denied the application in a standard order. *People v. Miller*, 481 Mich. 880 (2008).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

> I. The prosecutor committed misconduct when she interjected her personal thoughts and opinions about Petitioner's guilt through facts not in evidence both at the preliminary examination and during trial. Additionally, the prosecutor committed misconduct by withholding exculpatory evidence from the defense.
>
> II. The trial court erred, thereby denying Petitioner his right to due process, when it improperly bound-over Petitioner despite the prosecution's failure to demonstrate probable cause for his arrest on both felony murder and the predicate felony.
>
> III. Petitioner was denied the effective assistance of counsel when his trial counsel failed to visit and discuss trial strategy with him, failed to object to the prosecutor's misconduct in using facts not in evidence, failed to object to the

> judge's lack of attention to the case over which he was presiding, failed to investigate an alibi witness, as well as others who could have been probable suspects in the victim's death, and failed to present mitigating evidence at the preliminary examination, trial, and sentencing.
>
> IV. Petitioner was denied the effective assistance of counsel on appeal when his appellate counsel failed to meet with him and discuss potential claims for direct appeal, and failed to raise more meritorious claims that were raised in Petitioner's motion for relief from judgment.

The trial court denied the motion by opinion and order dated December 3, 2009. Petitioner filed an application for leave to appeal in the Michigan Court of appeal that raised the same issues, which was denied because Petitioner "failed to meet the burden of established entitlement to relief under MICH. CT. R. 6.508(D)." *People v. Miller*, No. 296705 (Mich. Ct. App. October 11, 2010). Petitioner appealed this order to the Michigan Supreme Court, but it denied relief with citation to the same court rule. *People v. Miller*, 489 Mich. 896 (2011).

Petitioner's habeas petition raises the seven claims he presented to the state courts on direct and collateral review.

## II

AEDPA, which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state-court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)–(2); *Franklin v. Francis*, 144 F.3d 429, 433

(6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, "the state court's [application of federal law] must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520–21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).

Additionally, this Court must presume that the state court's factual determinations are correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); see also *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous") (citation omitted).

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405–06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the

- 6 -

writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, 131 S. Ct. 770 (2011), the Supreme Court reiterated that the AEDPA requires federal habeas courts to review state-court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785–86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III

### A

Petitioner first asserts that there was constitutionally insufficient evidence presented at trial to sustain his conviction. Specifically, he argues that the evidence did not establish his identity as the perpetrator of the homicide, and he also argues that there was no evidence offered to demonstrate that he committed the predicate felony of larceny to support his conviction of first-degree felony-murder. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Review of a challenge to the sufficiency of evidence must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Supreme Court recently characterized this standard as requiring a defendant to show that the jury's verdict "was so insupportable as to fall below the threshold of bare rationality." *Coleman*

*v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Under AEDPA review, the standard becomes even more difficult to meet. This is because "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id*. This "twice deferential" standard does not permit a habeas court to engage in a fine-grained factual parsing. *Coleman*, 132 S. Ct. at 2064; *Parker v. Matthews*, 132 S. Ct. 2148 (2012).

Here, the Michigan Court of Appeals cited the *Jackson* standard, and then applied it to the facts of Petitioner's case in a manner that was not objectively unreasonable. With respect to the predicate felony of larceny, the evidence indicated that the victim kept money at her house, but none was found there after the murder. The safe had been forced open, and the money belt the victim wore was missing. This evidence sufficed to allow a rationale fact-finder to conclude beyond a reasonable doubt that the murder occurred during the perpetration of a larceny.

Next, the evidence was sufficient to establish Petitioner's identity as the perpetrator of the crime. Petitioner was one of only a few family members to have access to the victim's secure house, and there was no evidence of forced entry into the home. The evidence indicated that Petitioner was the last person to be inside the victim's house. The fact that the perpetrator located the safe and apparently knew that the victim wore a money belt also tended to indicate that the perpetrator was a person familiar with the victim and where she kept her valuables. Moreover, the victim's blood was found on Petitioner's clothing. The victim's other family members had no apparent motive to murder the victim, whereas evidence was presented to indicate that Petitioner had a drug problem and no source of income to support it.

Accordingly, while the evidence presented against Petitioner cannot fairly be characterized as overwhelming, it was constitutionally sufficient to allow the trial court to find Petitioner guilty. The verdict "was [not] so insupportable as to fall below the threshold of bare rationality." *Coleman, supra*.

**B**

Petitioner's second claim asserts that he was denied a fair trial by the erroneous admission of propensity evidence. Specifically, he asserts that the he was unfairly prejudiced by the admission of evidence that a small bag of marijuana was found in his possession when he was arrested and that he had outstanding arrest warrants in Ohio. Petitioner's related third claim asserts that he was denied the effective assistance of trial counsel when his attorney failed to object to the admission of this evidence.

The Michigan Court of Appeals found that the evidence was properly admitted as a matter of state law. It found that the fact that marijuana was found on Petitioner when he was arrested was relevant to rebut Petitioner's assertion that if he was the perpetrator of the crime, he would have been found in possession of the victim's money. The prosecutor used Petitioner's drug possession to suggest that Petitioner spent the proceeds of the crime on drugs. The state appellate court found that the testimony regarding Petitioner's outstanding Ohio warrants was relevant to establish Petitioner's movements following the crime and to assist the trial court's understanding of the course of the investigation.

The Michigan Court of Appeals' decision was neither contrary to Supreme Court precedent nor an unreasonable application thereof. Further, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas

relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).

Accordingly, to the extent that Petitioner asserts that the trial court erred in admitting testimony under the Michigan Rules of Evidence, he merely alleges violations of state law which do not entitle him to federal habeas relief. *See*, *e.g.*, *Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Petitioner has also not shown that the admission of the disputed evidence violated his federal due process rights. There was nothing fundamentally unfair about the admission of evidence tending to indicate a motive for the crime and an explanation for why the proceeds of the robbery were not found on Petitioner. Moreover, because this was a bench trial, the possibility of unfair prejudice is minimal. "A trial judge acting as the finder of fact is presumed to have followed the law . . . ." *Matthews v. Abramajtys*, 92 F. Supp. 2d 615, 642 (E.D. Mich. 2000); *accord Harris v. Rivera*, 454 U.S. 339, 346 (1981). There is little chance, therefore, the trial court convicted Petitioner merely because he was a "bad person" who carried marijuana and had outstanding warrants. Rather, it is presumed that the trial court considered this evidence for the limited purposes for which it was admitted. Accordingly, Petitioner's second claim is without merit.

With respect to Petitioner's third claim, his trial counsel's failure to make a frivolous or meritless objection to the admission of this evidence does not constitute ineffective assistance of counsel. *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007).

-10-

## C

Petitioner's remaining claims were presented to the state courts during his post-conviction review proceedings.

Petitioner's fourth claim asserts that the prosecutor committed misconduct by inserting a personal belief regarding Petitioner's guilt during argument and withholding exculpatory evidence. His fifth claim asserts that he was bound-over for trial despite inadequate evidence being presented at the preliminary examination. His sixth claim asserts that his trial attorney was ineffective in preparing for trial and in conducting Petitioner's trial defense. Petitioner's seventh claim asserts that his appellate counsel was ineffective for failing to raise these other claims during Petitioner's direct appeal.

The trial court denied the motion for relief from judgment which raised these claims because "Defendant had not shown 'good cause' under Rule 6.508(D)(3) as to why the issues presented in the motion were not previously raised on appeal. Further, he had not proven actual prejudice." Op. Denying Motion for Relief from Judgment, at 6. The state appellate courts then denied relief by citation to Michigan Court Rule 6.508(D).

As explained above, federal habeas relief is precluded for claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. The United States Court of Appeals for the Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291–92 (6th Cir. 2010) (*en banc*). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of

the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief. If the trial court's decision was based on the merits, then the claims raised in the motion for relief from judgment are not procedurally defaulted. *Id*. However, if the trial court relied on a procedural basis for denying relief, such as a defendant's failure to satisfy the "good cause and actual prejudice" standard of Rule 6.508(D)(3), then review of the claims raised in the motion are barred from review. *See McFarland v. Yukins*, 356 F.3d 688, 697–98 (6th Cir. 2004).

In this case, the trial court found that Petitioner did not establish good cause to excuse his failure to raise the claims he raised in his motion for relief from judgment on direct appeal under Rule 6.508(D)(3). Accordingly, the decision of the state courts rests on a state procedural ground, and the claims Petitioner presented to the state courts in his motion for relief from judgment are procedurally defaulted.

Petitioner asserts in his seventh claim that he received ineffective assistance of appellate counsel as cause to excuse his default. But it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail." *See*

*Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002); *see also Fautenberry v. Mitchell*, 515 F .3d 614, 642 (6th Cir. 2008). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has not demonstrated that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate issues on direct appeal. Those issues, while not warranting reversal, were developed, and the claims presented in the motion for relief from judgment are not obviously stronger. In fact, the claims raised by Petitioner's counsel during his direct appeal still form the lead issues in his habeas petition.

The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Habeas relief is therefore not warranted on these claims.

## IV

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would

find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336–37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court will also deny Petitioner permission to proceed on appeal in *forma pauperis*. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a).

**V**

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that Petitioner may not proceed in *forma pauperis* on appeal.

Dated: June 27, 2013                                  s/Thomas L. Ludington
                                                                                   THOMAS L. LUDINGTON
                                                                                   United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail, and upon Charles Miller #625647 Macomb Correctional Facility, 34625 26 Mile Rd, New Haven, MI 48048 by first class U.S. mail on June 27, 2013.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS